ITokxblower, C. J.
The jury having rendered a verdict for the plaintiff, a new trial is sought for;
First, on the ground of a variance between the alleged libel given in evidence, and the libel set out in the first count.
The libellous matter complained of in the first count is supposed to be contained in a letter said by the defendant, to have been written to him, by one "Walbridge, and copied by the defendant into, and made part of, a letter written by him to the wife of the plaintiff. In that letter, Walbridge is made to say to the defendant, “ I sought you out to give you the information which I derived from Mrs. Smith, namely, that your wife had been brought to bed, and had produced a child, which report said, was Dr. Schenek’s ” (that is the plaintiff’s). Whereas the first count of the declaration charges that the defendant published a libel, stating that “ his ” (the defendant’s wife) u had been brought to bed, and had produced a child, which report said was Dr. Schenck’s child.” Whatever there might be of a serious nature in this objection, it is obviated by the fact, that the whole writing is set out at length in this second count.
Two other questions however were raised on this part of the case. First, whether the matter contained in the letter was libellous. Secondly, whether a sealed letter addressed to the plaintiff’s wife and handed to her unopened, was such a publication as the law requires to constitute a libel. But upon these points I have no doubt. A man may slander or libel another as effectually, by circulating rumors or reports, or by putting his communication, spoken or written, in the shape of hearsays, as by making distinct assertions of the slanderous matter and giving them out as truths within his own knowledge, or for the accuracy *210 of which he pledges his own veracity. The only difference is, the latter class of calumniators are rather the more honorable of the two, if any comparison can be made between such characters.
Nor have I any doubt butthat a sealed letter or other communication delivered to a wife, is a publication within the meaning of the law. A slander uttered, or published abroad, may never reach the ears or eyes of wife or children. But such a communication made directly to the wife, is an attempt to poison the fountains of domestic peace, conjugal affection and filial obedience at their very sources.
Secondly, it is objected that the third count is on a libel published in the Somerset Messenger, and that the judge admitted the newspaper to be given in evidence without producing or accounting for the manuscript.
This seems to be a mistake. The libel set out in this count is entitled, “ another lie from an old liar” and the particular libellous matter complained of, consists in the words “Ellen Schenck, wife of the lying Doctor” I do not find that this document was ever published in the Messenger; but I do find among the papers submitted to the court and referred to on the argument, duplicates of a paper, headed, “ another lie from an old liar,” and containing the words “ Ellen Schenck wife of the lying doctor,” as set forth in the third count of the declaration, and which papers are signed “ Abr’m C. Schenck” but bear no date. But I have searched the state of the case in vain, to find out how the defendant had been connected with the making or publishing of these papers; unless they are the notices spoken of by Dr. George P. Rex, who testifies, that “ the defendant put up the notice on the bridge, and left one at Esquire Beekman’s and one at Elaggtown, at Porter’s tavern,” in the fall of 1835. These papers have written upon them “ Bridge,” but whether they are the papers spoken of by the witness Dr. Rex, it is im- ■ possible for me to tell, as the state of the case and the evidence of Dr. Rex, fail to identify them by a reference to their contents, or in any other way. It may be easy for counsel who have tried a cause at the circuit, to be familiar with the facts, and to know what papers are meant by the witnesses who testified concerning them on the trial; but it is very embarrassing to a court reviewing the proceedings below, when there is nothing in the state of *211 the case to describe or identify the papers spoken of by witnesses, and upon the contents or admissibility of which nevertheless, the question to be settled may depend.
I presume however, that these papers contained the libel on which the third count in the declaration was framed; and if so, they are sufficiently traced to, and proved to have emanated from the defendant by the testimony of Dr. Rex.
If however the third count was framed on another writing published in the Somerset Messenger, and however wrong it might have been for the judge to admit that periodical to be read in evidence before the manuscript had been produced or accounted for, (and according to the case of Adams v. Kelly, in R. & M. 149, 21 English com. law R. 403, it certainly was so,) yet that objection was in my opinion fully obviated by the testimony of Allison, the printer who testifies that the defendant paid for the publications in the Messenger, which were given in evidence on the trial; and such payment was in my opinion evidence to go to the jury of a recognition on the part of the defendant of his paternity or adoption of those documents.
The fourth count in the declaration is founded on the contents of a letter written by the defendant to his own wife, and under the circumstances of this case, that letter was very properly ruled out by the judge at the circuit.
The whole case then on the part of the plaintiff, so far as respect his original and substantial cause of action was set forth in his second and third counts, namely, that in a letter to the plaintiff’s wife, the defendant copied a letter to himself, from one Walbridge, in which Walbridge informs him, that Mrs. Smith, had said, that defendant’s wife had been delivered of a child, of which the plaintiff was the father • and in the next place that in a paper put up or published by the defendant, he had spoken of,the plaintiff as “ the lying doctor.” These are the only matters pretended to be actionable, set forth in the plaintiff’s declaration. Whatever else was proved on the trial, to have been said, done or published by the defendant, in respect of the plaintiff, could only have been admitted to show the quo animo, and to enhance the damages. But it is objected that several matters were admitted in evidence, under this pretence, that ought not to have been.
So far as I can ascertain from the state of the case, four pa *212 pers, copies of each other and each headed “ To the public at large,” and which commence with these words, “ I had really supposed that the lying doctor, I mean that scape goat J. R. S-'henck,” &c. were admitted to be read in evidence on the trial of this cause. It was testified by Samson M. Smith that he wrote these papers and also one dated February 16, 1835, postmarked New York, by direction of the defendant, and that they were published in the newspapers.
It was objected by the counsel for the defendant on the argument of this motion, that Smith was an incompetent witness to prove that he wrote these libellous papers, by the direction of the defendant: 2 Har. Dig. 916, 12 Petersd. Abridge. 149, and Harding v. Greening, 8 Taunt. 42, 4 Eng. com. law R. 13 were cited to that point. Without expressing any opinion upon the doctrine laid down in Harding v. Greening, it was sufficiently answered by the plaintiff’s counsel, that the testimony of Smith was not objected to on the trial below. He did not ask the protection of the court, but answered the questions; and if the jury believed him, he sufficiently proved that the defendant was the author of these last mentioned papers.
• But that is not the point. The question is, whether, if they had been proved to be in the hand writing of the defendant himself, they would have been admissible evidence in this cause. I know there are some conflicting cases in the books upon the subject of what may be given in evidence under the general issue, to aggravate or to mitigate damages, in actions for slander.— But words or libels, actionable in themselves, spoken or published at others times and in relation to other matters, cannot be given in evidence for the purpose of increasing damages.
I think the article dated Clover Hill, October 16, 1835, the manuscript of which was produced and proved on the trial, and which was published in the Messenger, was very properly admitted in evidence. That was written and published after his suit was commenced; and in it the defendant says he should like to know why the Doctor has arrested him for slander, “ especially when the truth only has been published;” thus reiterating and affirming the truth of what he had before published concerning the plaintiff. It is true this article contains other matter, easting imputations of dishonesty on the plaintiff, in relation to *213 a totally distinct subject; and amounting to a fresh libel; and in Finnerty v. Tipper, 2 Campb. R. 72, Sir Jas. Mansfield, Chief Justice, would only permit so much of a new publication to be read, as had reference to the old' libel. But I think when a defendant in such a suit will issue oe(w publications, mixing up the matter ibr which he has been sued, with libellous charges upon other subjects, he cannot call upon the court to analyze the publication and carefully separate what refers to the former libel from the new slanders it may contain.
I think also the communication dated Clover Hill, September 16, 1835, and published in the Messenger of the 22d of that month, in which the defendant speaks of c( all the falsehoods ” the plaintiff “ has told,” and “ all the base assertions ” he has made, was properly admitted in evidence, as evincive of the feelings and temper of the defendant towards the plaintiff. So too the placards which the defendant posted up at the bridge and elsewhere, the original manuscripts of which were produced on the trial, headed, “ To the public at large,” in which he speaks of the plaintiff as “ the lying doctor,” and “ the scapegoat,” were proper evidence; for they are in substance only repetitions of the libel complained of in the third count of the declaration.
But the piece headed “ Wonder,” dated Clover Hill, March 26,T835, published in the Messenger of the 7th April, 1835, and the article addressed “ To the Editors of the Messenger,” dated 16th April, 1835, and published in that paper of the 21st of that month, I think were entirely irrelevant, and ought not to have been read in evidence to the jury. They neither of them have any reference to the libels for which the action was brought; but relate to entirely different matters. The first of them, by insinuation, charges Dr. Schenck, if he was the person meant, with taking an unfair advantage of a lady in a pecuniary matter, and the second article relates exclusively to the same thing. Taken together, if not separately, they constitute a palpable libel, if the charge conveyed against the plaintiff be unfounded, Stuart v. Lovell, 2 Stark R. 93, in 3 Eng. com. law R. 261. But the writer ought not to be prejudiced by these articles, in this suit; for here he can have no opportunity of excusing himself by giving the truth in evidence. The reasoning of Mansfield, Chief Just *214 ice in the case before cited (2 Camp. 72,) is conclusive upon this point.-
Another point was made on the argument in relation to the pamphlet. But in my opinion that was properly admitted in evidence, as manifesting the quo animo, with which the libels set forth in the declaration had been written. They no doubt grew out of, and had reference to the quarrels between the defendant and his wife, and the consequent application for a divorce, to which the pamphlet relates. Nevertheless a new trial must be granted, on the ground that the two last mentioned publications in the Messenger were improperly admitted in evidence.
Rule absolute, and costs to abide the event of the suit.